**UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA**

| | |
|---|---|
| Emmet Darnell Wall,<br>Petitioner<br>-vs-<br>Attorney General of the State of Arizona, *et al.*,<br>Respondents. | CV-13-1275-PHX-JAT (JFM)<br><br>**Report & Recommendation<br>on Petition for Writ of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at San Luis, Arizona, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 3, 2013 (Doc. 5). On April 24, 2014, Respondents filed their Response (Doc. 14). Petitioner has not replied.

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

This Petition arises out of two separate prosecutions in Maricopa County Superior Court, cause numbers CR2008-101152 and CR2008-140346. The first, 1152, resulted from an Indictment filed February 4, 2008 charging various drug offenses, historical priors, additional priors, etc. (Exhibit A, Indictment; Exhibits B, C, D, E, additional

1

allegations.) (Exhibits to the Answer, Doc. 14, are referenced herein as "Exhibit ___.") The second, 0346, resulted from a direct complaint filed July 1, 2008, making an additional drug charge, as well as allegation of priors and commission while on release. (Exhibit F, Complaint; Exhibits M, N, O, additional allegations.)

In both proceedings, counsel filed motions for a competency evaluation under Arizona Rule of Criminal Procedure 11, as well as requesting consolidated competency proceedings. (Exhibits G and J.) The matter was consolidated (Exhibit K, M.E. 8/4/8), Petitioner was evaluated, and the parties stipulated to a determination on the basis of the experts' reports. (Exhibit FF, PCR Pet. at Exhibit E, Stipulation 8/14/08.) Petitioner was found incompetent to stand trial and was ordered to submit to treatment and to be confined during treatment. (Exhibit P, Order 8/14/08.) Following treatment, the parties again stipulated to a determination of competency based upon an expert's report. (Exhibit R, Stipulation 10/16/08.) Petitioner was found competent to stand trial, subject to continued medication, and Petitioner was ordered to take the prescribed medication. (Exhibit S, M.E. 10/16/08.)

Petitioner then entered into written Plea Agreements (Exhibits V (1152) and W (0346)), and pled guilty to one count of possession of narcotics for sale and possession of marijuana (Exhibits X, M.E. 1/5/9 (1152), and Y M.E. 1/5/9 (0346).) On February 17, 2009, Petitioner was sentenced to 9 years on the narcotics charge (Exhibit Z, Sentence), and a concurrent 1 year on the marijuana charge (Exhibit AA, Sentence).

**B. PROCEEDINGS ON DIRECT APPEAL**

Petitioner did not file a direct appeal. (Amend. Petition, Doc. 5 at 2.)

Moreover, as a pleading defendant, Petitioner had no right to file a direct appeal. *See* Ariz.R.Crim.P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).

/ /

/ /

## C. PROCEEDINGS ON POST-CONVICTION RELIEF

On April 29, 2009 Petitioner instituted his first PCR proceeding by filing a Notice of Post-Conviction Relief (Exhibit BB). Counsel was appointed (Exhibit CC, M.E. 6/10/09), but eventually filed a Notice (Exhibit DD) of inability to find an issue for review. Petitioner was granted leave to file a *pro per* petition, which he did on December 9, 2009.

In his PCR Petition, Petitioner argued that the evaluation on which the finding that he had been restored to competency was flawed, and trial counsel was ineffective for failing to challenge the reliance on the report, rendering his plea of guilty involuntary. Petitioner also argued that the plea was coerced by counsel's failure to prepare for trial and counsel failed to adequately explain Petitioner's exposure at sentencing, and that there was a breakdown in communication. (Exhibit FF.)

The PCR court found the claims regarding competency to be without merit, did not address the remaining allegations, and summarily dismissed the petition. (Exhibit II, M.E. 3/30/10.) Petitioner filed a Motion for Reconsideration (Exhibit LL), which after a delay of some 18 months was denied (Exhibit NN, M.E. 1/26/12.)

Petitioner then filed a Petition for Review with the Arizona Court of Appeals (Exhibit PP), which was summarily denied. (Exhibit QQ, Order 5/15/13.)

## D. PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his original Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 26, 2013 (Doc. 1). That Petition was dismissed for failure to name a proper respondent, with leave to amend. (Order 9/24/13, Doc. 4.) On October 3, 2013, Petitioner filed his amended Petition (Doc. 5). Petitioner's Amended Petition asserts two grounds for relief:

> (1) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated because he was not competent to stand trial or accept a plea; and

3

          (2) Petitioner's trial counsel was ineffective in violation of the Sixth Amendment.

(Order 9/24/13 at 1-2.)

**Response** - On April 24, 2014, Respondents filed their Response ("Answer") (Doc. 14). Respondents argue the Petition is without merit.

**Reply** – Petitioner was given through May 27, 2014 to file a reply in support of his Petition (*see* Order 5/1/14, Doc. 16), but has not done so.

### III. APPLICATION OF LAW TO FACTS

**A.  GROUND ONE – COMPETENCE**

In his Ground One, Petitioner argues that he was permitted to plead guilty while incompetent, in violation of his rights to due process. Petitioner argues that he had been found incompetent, and at the time he pled guilty, he was "medicated on psychotic drugs impairing his judgment to make a rational decision." (Amend. Pet. Doc. 5 at 6.)

Respondents argue that the PCR court properly rejected this claim.[1] Respondents point out that the post-restoration expert opined that Petitioner was competent, the trial court questioned Petitioner on his medical history and the effects of his medications, and conducting an appropriate colloquy and concluded that Petitioner's plea was "knowingly, intelligently, and voluntarily entered." Respondents argue that the pre-restoration reports are irrelevant to Petitioner's post-restoration competence, but nonetheless opined that Petitioner was capable of restoration. (Answer, Doc. 14 at 10-12.)

Petitioner has not replied.

A defendant that "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171–72 (1975). And

---

[1] To be precise, Respondents contend that the state court decisions on Plaintiff's claims were sufficiently correct to withstand review under the standards of 28 U.S.C. § 2254 for grants of habeas relief. Because the undersigned finds the claims to be without merit, these standards are not addressed.

4

"the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Id*. at 172 (citing *Pate v. Robinson*, 383 U.S. 375 (1966)). "A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (citations omitted).

Nonetheless, "[r]equiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel." *Godinez*, 509 U.S. at 402. Of course, in the context of a guilty plea (as opposed to trial), there must also be a finding that "the waiver of his constitutional rights is knowing and voluntary." *Id.* at 400.

To attack a guilty plea in a federal habeas proceeding based upon incompetence, the petitioner must prove that he was "incompetent in fact at the time of the plea." *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990). Moreover, the determination of competence is a "fact" question, and accordingly a state court determination of competence is entitled to a presumption of correctness. *Thompson v. Keohane*, 516 U.S. 99, 111 (1995); *Torres v. Prunty*, 223 F.3d 1103 (9th Cir. 2000); 28 U.S.C. § 2254(e)(1).

Here, the trial court made a finding that Petitioner was competent. To counter that finding, Petitioner proffers only the findings of the pre-restoration reports and allegations that he was on medication at the time of his plea.

Petitioner also mounts various arguments about the requirement for a competency hearing. (Amend. Pet. Doc. 5 at attached pg. 3.)  However, here, the trial court did conduct such a hearing, albeit based upon the stipulation of submission on the expert's report. (*See* Exhibit S, M.E. 10/16/08.)

As noted by Respondents, the pre-restoration reports were just that: pre-restoration.  Dr. Bennette Dawson, Ed.D. diagnosed Petitioner with unspecified cognitive and psychotic disorders, and opined that Petitioner was "NOT competent to stand trial…due to significant cognitive impairment or defect and mental illness." But

5

Dr. Dawson also opined that Petitioner had a "fair" "prognosis for restoration to competency" with treatment. (Exhibit FF, PCR Pet. at Exhibit C, Dawson Report.)

Similarly, Dr. Joseph Franzetti, M.D., diagnosed Petitioner with an unspecified psychotic disorder, and opined that Petitioner was "not competent" but that he "will be restored to competency," although such competency would be "medication dependent." (*Id.* at Exhibit D, Franzetti Report.)   Petitioner was provided that restorative treatment. There is nothing in the Dawson and Franzetti reports to suggest that it was unsuccessful.

Indeed, in his post-restoration report, Dr. John Shaughnessy, Ph.D. reported finding that Petitioner had received medications which had resulted in him showing "no signs of psychosis." Dr. Shaughnessy opined that Petitioner was "restored on medication and is competent to stand trial," although "competency is considered medication-dependent." (*Id.* at Exhibit G, Shaughnessy Report.)  Thus, rather than countering a finding of competency, the pre-restoration reports, coupled with the post-restoration report, support a finding of competency after treatment.

Petitioner argued in his PCR Petition that Dr. Shaugnessy's opinion should be rejected because it was based upon a conclusion that Petitioner had been restored to competency after only 8 days of treatment. (Exhibit FF at 6.)   This seems to be based upon the report's notation that on "August 22, 2008 [8 days after the commitment order] the RTC program completed a Restoration to Competency Plan." (*Id.* at Exhibit G, Franzetti Report at 3.) On review, however, this appears to relate only to the preparation of a plan, not the fulfillment of the plan. Indeed, the report reflects in the next paragraph that "Psychiatric Care" via treatment and evaluation was occurring thereafter.  (*Id.*) Moreover, Dr. Shaughnessy's conclusions were based, at least in part, on his evaluation of Petitioner on October 2, 2008, long after the eight days referenced by Petitioner. (*Id.* at 1.)  Finally, Petitioner proffers nothing more than conjecture to suggest that 8 days on his medication was not adequate to restore him to competency.

Also in his PCR Petition, Petitioner similarly took out of context a portion of Dr. Shaughnessy's report concerning the "Competency Education Program."  The report

6

reflects:

> The MHP [Mental Health Professional] met with the defendant five times to date and on July 31, 2008 noted that the defendant has been pleasant and cooperative during the sessions. During the third session the defendant showed a good understanding of the legal concepts. The defendant obtained a score of 98% on the T/F LAQ and 90% on the multiple choice LAQ.

(*Id.* at 3.)  Petitioner read this as suggesting that Petitioner was deemed competent on July 31, 2008, before the commitment order was even issued. (Exhibit FF, PCR Pet. at 12.)  To the contrary, the report simply reflects that on July 31, 2008 Petitioner was "pleasant and cooperative."  Those characteristics are not contrary to a finding of of incompetence.  Indeed, Dr. Dawson noted upon examination that led to a finding incompetence, that Petitioner's "interpersonal manner varied between compliant and mannerly to abrasive and suspicious."  (*Id.* at Exhibit C, Dawson Report.)

Finally, Petitioner proffers nothing to support his contention that his medications rendered him incompetent.  At the plea colloquy, the court inquired about the medications:

> THE COURT: You have told me that you read the plea agreements and also discussed them with your attorney, Mr. Dorr, and we will go through those in just a minute.
> Have you had any drugs, alcohol, or medication in the last 24 hours?
> THE DEFENDANT: My medication.
> THE COURT: What medication do you take?
> THE DEFENDANT: Blood pressure, psych medication.
> THE COURT: Does the psych medication or any of the medication affect your ability to understand these proceedings?
> THE DEFENDANT: No.
> THE COURT: Very good. Do you recall what type of medication you take, the psych meds?
> THE DEFENDANT: No.
> THE COURT: Is it you don't have that in your booking cards? Okay. All right.
> Mr. Wall, you know better than anyone whether it affects your ability to understand these proceedings. We will take your word on that, sir.

(Exhibit UU, R.T. 1/5/09 at 4-5.)  Indeed, there was no reason to conclude that the medications being taken by Petitioner not only did not render him incompetent, but were necessary for his competence.

7

In sum Petitioner fails to proffer any clear and convincing evidence that he was not competent at the time he entered his guilty plea.

Similarly, Petitioner fails to show that his plea was rendered unknowing or involuntary because of his mental condition or medication. To be sure, competence and the wavier standard are distinct. *See Godinez*, 509 U.S. at 400. However, Petitioner proffers no explanation how his medications rendered his plea unknowing or involuntary. He points to no right he did not understand, no element of the plea he did not comprehend, nor does he proffer anything to show that he was incapable of making rational decisions. Conclusory allegations that are not supported by specific facts do not merit habeas relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir.1994); *see Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (conclusory allegations re involuntary guilty plea are subject to dismissal). When a petitioner's "claim of incompetence due to the ingestion of drugs is conclusory or inherently incredible, a district court has the discretion to dismiss the petition without a hearing." *U.S. v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004). While the ingestion of psychotropic drugs sounds ominous, here there is no reason to believe that those drugs were not the very ones that Petitioner had been ordered to take to establish his competence. And Petitioner proffers nothing to support a finding that, somehow, on the day of his guilty plea they rendered him unable to enter a knowing and voluntary plea.

Based upon the foregoing, the undersigned concludes that Petitioner's Ground One is without merit and must be denied.

### B. GROUND TWO – INEFFECTIVE ASSISTANCE

In his Ground Two, Petitioner asserts he was denied effective assistance of trial counsel due to: (1) a breakdown in communication with counsel evidenced by their mutual motions to withdraw; and (2) counsel's allowing Petitioner to plead guilty while incompetent, as shown by the final competency report and his taking "psychotic medication."

**Competence to Plead Guilty** - Respondents do not address the argument concerning a breakdown in communication. Respondents do argue that the PCR court properly rejected the balance of this claim concerning Petitioner's competence.[2] Respondents point out that the post-restoration expert opined that Petitioner was competent, and that his report did not establish a basis for counsel to conclude to the contrary. (Answer, Doc. 14 at 12-14.)

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

Ordinarily, a petitioner attacking the validity of a guilty plea on competency grounds must "prove, by a preponderance of the evidence, that he was incompetent in fact at the time of the plea." *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990). Where he raises incompetence in relation to a claim of ineffective counsel, however, he "need only demonstrate a 'reasonable probability' that he was incompetent, 'sufficient to undermine confidence in the outcome'." *Id*. at 595.  Nonetheless, if the habeas court is faced with a state court determination of competence which must be presumed correct, then the habeas court cannot find a deficiency of counsel in failing to request a competency hearing. *Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997).

As discussed hereinabove, Petitioner fails to proffer any evidence that he was incompetent at the time of his plea. Nor does he proffer anything to demonstrate a reasonable probability of incompetence.

---

[2] Arguably, this claim was not presented in Petitioner's Petition for Review to the Arizona Court of Appeals. (*See generally* Exhibit PP.)  However, Respondents do not contend that this claim is unexhausted.

Petitioner's bare reference to taking psychotic medications, in light of the medication dependent competency finding, fails to create a reasonable probability of incompetence.

Moreover, when investigating a defendant's mental health, an attorney is entitled to rely on the opinions of mental health experts. *See Hendricks v. Calderon*, 70 F.3d 1032 (9th Cir. 1995) (deciding whether to pursue an insanity or diminished capacity defense); *Moran v. Godinez*, 57 F.3d 690, 699–700 (9th Cir. 2004), overruled on other grounds in *Lockyer v. Andrade*, 538 U.S. 63 (2003), (competence to stand trial). Here, counsel properly relied upon the post-restoration report. To be sure, Petitioner quibbles with the post-restoration report (which finds him competent), but as discussed above those quibbles are red herrings, and do not raise a reasonable probability of incompetence. Nor would they have established cause for counsel to doubt the propriety of the report's conclusions or for counsel to have investigated further.

**Breakdown in Communication** – Petitioner argues that counsel was ineffective as a result of a breakdown in communication between them, citing the motions filed by both Petitioner and counsel seeking to terminate the representation.[3]

The Sixth Amendment does not guarantee a "meaningful relationship" between a client and his attorney. *Morris v. Slappy*, 461 U.S. 1, 14 (1983). However, forcing a defendant to go to trial with an attorney with whom he has an irreconcilable conflict amounts to constructive denial of the Sixth Amendment right to counsel. *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970). However, an irreconcilable conflict in violation of the Sixth Amendment occurs only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel. *Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000). Disagreements over strategy or tactical decisions do not rise to level of a complete

---

[3] Petitioner asserted similar arguments in his PCR Petition (Exhibit FF at 19-21), and the State responded to them (Exhibit GG at 7-8). However, the PCR court did not address this claim. (*See* Exhibit II, M.E. 3/30/10.) Arguably, the claim was not reiterated in Petitioner's Petition for Review to the Arizona Court of Appeals. (*See generally* Exhibit PP.) However, Respondents do not contend that this claim is unexhausted.

10

breakdown in communication. *Id.*

Petitioner does not provide any facts to support an allegation that there was a complete breakdown in communication. His September, 2008 Motion to Withdraw Counsel simply listed:

> A) ineffective assistance of counsel
> B) lawyer client trust has been broken
> C) conflict between client and attorney

(Exhibit Q, Mot. Withdraw at 1.) In other motions, Petitioner detailed delays or gaps in communication and disputes over strategy and tactics (e.g. bench trial vs. jury trial, motion to suppress, change of judge, witnesses to be called). (*See* Exhibit FF, PCR Pet. at Exhibit O and P, Mots. Withdraw.) The trial court ultimately held a hearing on the latter motion, and denied it. (Exhibit U, M.E. 10/22/08.) None of these allegations describe the type of breakdown in communications that would render counsel ineffective or Petitioner's plea uncounseled. Moreover, by the time of Petitioner's guilty plea, he reported to the court that he had "had enough time to talk about these plea agreements and to discuss them with [his] attorney." (Exhibit UU, R.T. 1/5/09 at 3.)

In sum, Petitioner fails to proffer anything other than conclusory allegations of a breakdown in communication that would have rendered his guilty plea uncounseled and involuntary. Accordingly, this claim is without merit.

## C. SUMMARY

Both of Petitioner's grounds for relief are without merit. Accordingly, the Petition should be denied.

## IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a

proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

### V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Amended Petition for Writ of Habeas Corpus, filed October 3, 2013 (Doc. 5) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings

and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

### VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: September 2, 2014

13-1275r RR 14 08 27 on HC.docx

James F. Metcalf
United States Magistrate Judge